R. H. McDonald and Helen L. McDonald, et al. [1] v. Commissioner. R. H. McDonald v. Commissioner
Docket Nos. 35526-35529, 35531, 35532, 35548, 35553, 35706.
United States Tax Court
1953 Tax Ct. Memo LEXIS 131; 12 T.C.M. (CCH) 1032; T.C.M. (RIA) 53293; August 31, 1953
*131 Herbert Bruce Griswold, Esq., for the petitioners. James A. Scott, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The respondent determined deficiencies in the income tax of the petitioners for 1948 as follows: Docket
No.
Deficiency
R. H. McDonald and Helen
L. McDonald
35526
$ 1,559.42
Charles Edwin Lovell and
Betty A. Lovell
35527
475.74
Hans P. Lauritzen and Mary
H. Lauritzen
35528
554.58
Alva H. Warner and Beulah
B. Warner
35529
103.72
Estate of Eldon H. Keller,
deceased; Florence M. Kel-
ler, Administratrix; and
Florence M. Keller
35531
934.78
Iarris B. McLaren and Co-
leeta C. McLaren
35532
789.32
Herman J. Sheedy and Lois
B. Sheedy
35548
784.96
Charles B. McDonald and
Florence McDonald
35553
40,708.92
Richard C. Lux
35706
85.77
The only issue for determination is the correctness of the respondent's action in determining that the entire amount of a distribution received by McDonald & Company, a partnership, with respect to land trust certificates owned by it constituted ordinary income and, accordingly, increasing the petitioners' distributive shares of such *132 income from that partnership. All other issues have been conceded by petitioners. Findings of Fact The proceedings were submitted on a stipulation of facts and various related documents. The facts stipulated are found accordingly. The following petitioners filed their income tax returns for the calendar year 1948, prepared on the cash basis, with the collector for the district of Ohio indicated below: Collection
district
Type of
in which
return
filed
R. H. McDonald and Helen
L. McDonald
Joint
10th
Charles Edwin Lovell and
Betty A. Lovell
Joint
18th
Hans P. Lauritzen and Mary
H. Lauritzen
Joint
18th
Alva H. Warner and Beulah
B. Warner
Joint
18th
Harris B. McLaren and Co-
leeta C. McLaren
Joint
18th
Herman J. Sheedy and Lois
B. Sheedy
Joint
18th
Charles B. McDonald and
Florence McDonald
Joint
18th
Richard C. Lux
Separate
18th All of the above petitioners who filed joint returns were husband and wife. Eldon H. Keller and petitioner Florence M. Keller were husband and wife during 1948 and filed a joint income tax return for that calendar year, prepared on the cash basis, with the collector for the 18th district *133 of Ohio. Florence M. Keller was at the time of the institution of these proceedings and is now the duly qualified and acting administratrix of the estate of Eldon H. Keller, who died May 20, 1951. McDonald & Company, sometimes hereinafter referred to as the partnership, was a partnership formed under the laws of Ohio. It filed its returns of income for the fiscal year April 1, 1947 through March 31, 1948, and the period April 1, 1948 through October 31, 1948, prepared on the accrual basis, with the collector for the 18th district of Ohio. At all times material herein the partnership was composed of the following partners: R. H. McDonald
Harris B. McLaren
Charles Edwin Lovell
Herman J. Sheedy
Hans P. Lauritzen
Charles B. McDonald
Alva H. Warner
Richard C. Lux
Eldon H. Keller
At all times relevant to these proceedings the partnership was a dealer in securities. In addition, it also held for investment in an investment account certain securities and other property, including the certificates involved herein. Such certificates, sometimes hereinafter referred to as land trust certificates, were designated "Fee Ownership Certificate," and related to properties *134 located in Cleveland, Ohio, and known as the Cleveland Hotel property. On April 1, 1947, the partnership owned 285 of the foregoing land trust certificates which it had purchased on the following dates at the indicated prices: Number
Total
of cer-
Date of
Price per
purchase
tificates
purchase
certificate
price
230
Dec. 18, 1946 $575
$132,250
38
Dec. 19, 1946
575
21,850
17
Jan. 14, 1947
575
9,775
The events leading up to the original issuance of the land trust certificates were as follows: In April 1927 the Cleveland Terminals Building Company, an Ohio corporation, hereinafter referred to as CTB, acquired the Cleveland Hotel property which consisted of three parcels and included land and buildings. The buildings were acquired at a cost of $3,041,748.33. The land was acquired at a cost of $1,622,708.33 under an option granted in 1917. The land was valued at approximately $3,521,000 on March 28, 1927, by qualified appraisers. On April 20, 1927, CTB conveyed the Cleveland Hotel property to the Guardian Trust Company, an Ohio corporation, sometimes hereinafter referred to as Guardian, as trustee. Concurrently with the conveyance, Guardian, *135 as such trustee and as lessor, and CTB, as lessee, on April 20, 1927, executed a lease dated April 1, 1927, with respect to the property. Concurrently with the execution of the foregoing lease by Guardian and CTB, Guardian executed an "Agreement and Declaration of Trust," dated April 1, 1927, and sometimes hereinafter referred to as the trust agreement, as trustee for such persons, partnerships, associations or corporations as might become parties to the agreement by acceptance of certificates of interest issued thereunder. The trust agreement provided for the issuance by the trustee of 7,000 certificates of equal shares of interest in the trust estate. These certificates were issued and sold for $3,500,000. Of that amount, CTB received $3,360,000 which it used, in part, to pay for a portion of the property which it conveyed to the trustee and, in part, to reduce certain liabilities it had assumed in connection with another portion of the property which it conveyed to the trustee. In March 1935, the National City Bank of Cleveland, sometimes hereinafter referred to as National, succeeded Guardian as trustee under the trust agreement. On October 13, 1936, CTB filed its petition *136 in the United States District Court for the Northern District of Ohio, Eastern Division, stating that it desired to effect a plan of reorganization under section 77B of the Bankruptcy Act. This petition was filed by CTB as subsidiary debtor in connection with the filing on the same day of a similar petition for reorganization under section 77B of said act by Van Swearingen Corporation which owned all of the stock of CTB. A plan of reorganization was submitted to the court. Among other things, the plan provided for certain modifications in the above-mentioned lease of April 1, 1927, and amendments to the trust agreement dated the same date. The plan also provided for the organization of a new corporation to take over assets of, and assume liabilities of, CTB and which would issue all of its shares to CTB. On March 6, 1945, the court entered an order confirming the plan. Thereafter on appeal by certain objectors, the court's action was affirmed on May 31, 1946. . A petition for a writ of certiorari filed by the objectors was denied on October 28, 1946. . *137 The time for filing a petition for rehearing expired on November 22, 1946, without any such petition having been filed. Pursuant to the plan of reorganization, a new corporation, Cleveland Hotel Corporation, an Ohio corporation, was organized on November 27, 1946. On December 31, 1946, the District Court entered an order approving consummation documents and directing CTB to proceed with the consummation of the plan of reorganization. Originally the lease of April 1, 1927, was for a period of 99 years from April 1, 1927, renewable forever, but the right to renew was abrogated by the plan of reorganization. The principal portion of the rental payable for the leased property was originally fixed at a stated amount annually, payable quarterly on the 15th day of the last month in each calendar quarter of each year. Under the plan of reorganization the dates of quarterly payment remained the same, but the amount of the rental to be paid quarterly was 1 1/4 per cent of the product arrived at by multiplying $500 by the number of land trust certificates outstanding at the time of payment. In addition, an annual rental payment was provided for based on the number of land trust certificates *138 outstanding at the end of the year and on the earnings for the year, and was payable on March 15 following the close of the year. As a part of the rent, both under the lease as originally made and as modified by the plan of reorganization, the lessee was to pay $4,500 annually as compensation to the trustee for its ordinary services and in addition was to pay the expenses of the trustee. The lessee was to pay all taxes, assessments, charges and levies of every kind imposed on the premises, and at its own expense was to keep and maintain all the buildings in good condition, order and repair, and maintain insurance on the premises in an amount satisfactory to the lessor. For the purpose of retiring land trust certificates, the lease originally provided for the establishment of a "Depreciation Fund" by the lessee in the ultimate amount of $2,750,000 and for the lessee to pay $35,000 annually into such fund beginning March 15, 1946. Under the plan of reorganization, the provisions for a "Depreciation Fund" were eliminated, but for the purpose of retiring land trust certificates (at $505 per certificate or at such lesser amount as offered by holders) the lessee was required to pay *139 to the trustee annually for the indicated calendar years the following minimum amounts: 1946 through 1950
$12,000
1951 through 1955
18,000
1956 through 1960
25,000
1961 through 1965
35,000
1966 through 1970
42,500
1971 through 1975
55,000
1976 and thereafter
70,000
Originally the lease gave the lessee an option to purchase the lessor's interest in the leased premises for $3,605,000 during the first five years of the term of the lease, for $3,570,000 during the next five years of the term, and for $3,535,000 thereafter. In event of purchase the lessee was to be given credit on the purchase price for the amount of the "Depreciation Fund" used to retire land trust certificates. As modified by the plan of reorganization the lease gave the lessee the option to purchase the lessor's interest for $3,535,000, and in event of purchase the lessee is to be given credit on the purchase price of a sum equal to $505 multiplied by the number of land trust certificates theretofore purchased by the trustee with funds received by it for that purpose. The trust agreement, both as originally made and as amended by the plan of reorganization, provided for distribution by *140 the trustee of the proceeds received by it under the lease. Respecting such distribution the plan of reorganization provided as follows income from the trust estate, or the proceeds of said rentals and income, to pay the compensation and all expenses of the Trustee, all rents required to be paid or permitted to be paid by the Trustee, all federal, state and local taxes, charges and assessments, whether levied or assessed under present or future laws, and whether levied or assessed against the Trustee or the trust estate, and all amounts paid or payable by the Trustee for the protection, preservation or benefit of the trust estate; and the Trustee shall further have the right to reserve and withhold out of said rentals and income received by it, or the proceeds thereof, and to retain in its hands, such amounts as the Trustee may from time to time deem necessary to provide for the payment thereafter of items of the classes aforesaid and to provide for the protection, preservation or benefit of the trust estate; and quarterly on the first days of January, April, July and October in each year, the money then in the possession of the Trustee arising out of the rentals and income aforesaid, *141 after deducting therefrom the amounts paid, reserved or withheld as aforesaid, shall be distributed by the Trustee to the certificate holders registered on its books at the close of business on the 15th day of the month preceding the date of the particular distribution in proportion to their respective interests at the close of business on said 15th day of such preceding month as evidenced by the Trustee's books, and the Trustee shall make distribution of said money to the certificate holders so registered on its books as aforesaid, without regard to the time when said rentals or income may have accrued or been payable to the Trustee; and distribution of money may be made by the Trustee by check at par in Cleveland, Ohio, exchange, and when so made the checks therefor, shall be mailed to the certificate holders as registered on the Trustee's books as of the close of business on the 15th day of the month preceding the date of the particular distribution, at their respective addresses as registered on said books; and any funds not collected by certificate holders shall be held by the Trustee, without interest, to the credit of such certificate holders. It is specifically understood that *142 the words 'rentals and income' as used in this paragraph shall not include any moneys coming into the hands of the Trustee for use in purchasing interests represented by certificates." Under the plan of reorganization the transfer of a land trust certificate by a holder after the 15th day of the last month of a calendar quarter did not affect the rights, if any, of the transferor as to any distribution in respect of the particular certificate made by the trustee on the first day of the next calendar month. The lease and the trust agreement as originally made provided an option to the lessee to purchase a specified portion of the leased property at gradually lower prices, dependent on the time after April 1, 1927, when the option was exercised. Provision was also made for retirement of land trust certificates at gradually lower prices out of the proceeds received by the trustee from the exercise of such option. If called for purchase after April 1, 1937, the retirement price per certificate was $505. While the lessee's option to purchase only a portion of the property was abrogated by the plan of reorganization, the retirement price per certificate under the plan was fixed at $505, *143 and the trust agreement, as amended, provided for the trustee to purchase certificates at that price out of funds received by it for that purpose. The trust agreement as amended by the plan of reorganization provided that upon sale of the trust property to the lessee, pursuant to the option contained in the lease or upon any other sale of the property, the trustee would distribute the net proceeds among the beneficiaries holding outstanding certificates, in accordance with the respective interests held by them upon surrender of their certificates. The trust agreement also provided that no beneficiary, as such, should have any legal title to the trust property held by the trustee nor have any right to call for any partition of the trust during the continuance of the trust; and that, unless sooner terminated, the trust should be terminated upon the expiration of the lease. On January 1, 1947, the plan of reorganization was consummated. Pursuant to the plan, a modification and supplement of the lease of April 1, 1927, was executed by National and the newly formed corporation, Cleveland Hotel Corporation, sometimes hereinafter referred to as Cleveland Corporation. Also, pursuant *144 to the plan, National executed an amendment of the declaration of trust dated April 1, 1927. During the period when approval of the plan of reorganization was being considered by the courts, CTB continued as lessee of the Cleveland Hotel property under the lease of April 1, 1927. The lease, as modified by the plan of reorganization, provided for the quarterly payment by the lessee as rent of an amount equal to 1 1/4 per cent of the product arrived at by multiplying $500 by the number of land trust certificates outstanding at the time of payment, and as an additional rental, among other things, one half of the net earnings of CTB. During the period of litigation relative to the plan, CTB paid the quarterly rental to the trustee and also made all other payments required of it, except the additional rental payments. CTB was required to hold the additional rental payments subject to further order of the court. The trustee distributed the quarterly rentals it had received from CTB to the certificate holders of record on the requisite dates, and in the letters transmitting these payments in the first quarter of each year set forth the audited reports of CTB's net earnings for the previous *145 year. Such earnings after payment of reorganization expenses were to be the subject of later distributions by CTB to the trustee - one half to be used in redeeming land trust certificates and the other half as additional rent to be paid to the outstanding certificate holders after consummation of the plan of reorganization. On January 2, 1947, the District Court entered an order determining CTB's net earnings for the period from July 1, 1942 through December 31, 1945, as $1,560,491.11, and directing that such earnings, together with CTB's net earnings for 1946, be transferred to Cleveland Corporation, that Cleveland Corporation pay from the $1,560,491.11 to the trustee the sum of $630,000 as additional rent, and the further sum of $630,000 to be used by the trustee for the purchase of land trust certificates, and that Cleveland Corporation hold the balance of the $1,560,491.11 and CTB's net earnings for 1946 subject to further order. Subsequent to and pursuant to said order, and prior to January 18, 1947, $630,000 was transferred to the trustee as additional rent for the period from July 1, 1942 through December 31, 1945, and $630,000 for the purchase of land trust certificates. *146 By letter dated January 18, 1947, the trustee advised the holders of land trust certificates of its receipt of $630,000 as additional rent and $630,000 for the purchase of land trust certificates and stated that "The additional rent of $630,000 aforesaid, together with such other funds (including the quarterly rent due March 15, 1947) as are then in the hands of the Trustee available for distribution, will be distributed on April 1, 1947, to certificate holders of record on March 15, 1947." On March 14, 1947, the District Court entered an order determining CTB's net earnings for the calendar year 1946 to be $187,380.88 and directed Cleveland Corporation forthwith to pay from said sum to the trustee the amount of $93,690.44 as additional rent and $93,690.44 for the purchase of land trust certificates. Subsequent to and pursuant to said order and prior to April 1, 1947, Cleveland Corporation transferred to the trustee the amount of $93,690.44 as additional rent for the calendar year 1946 and $93,690.44 for the purchase of land trust certificates. In a letter from the trustee to the certificate holders dated April 1, 1947, the trustee advised the certificate holders of record on *147 March 15, 1947, as to the amounts of rent for the first quarter of 1947, the additional rent for the period July 1, 1942 through December 31, 1945, and the additional rent for 1946, which were being paid on April 1, 1947, to said certificate holders. In addition, the letter advised the certificate holders as to certain shares of stock in the reorganized corporation which had been received by the trustee in the reorganization on its claim for unpaid rent and which shares were distributed with the letter. The letter further advised the certificate holders that the entire distribution, both cash and shares of stock, represented a distribution of rental and would be so reported by the trustee. In its fiduciary income tax return for the calendar year 1947, which was made on the cash basis, the trustee reported as rental income for that year the additional rent received for the period July 1, 1942 through December 31, 1945, and that received for the year 1946. On April 2, 1947, the partnership, McDonald & Company, as holder of record on March 15, 1947, of 285 land trust certificates, received, as its proportionate share of the amounts set out in the trustee's letter of April 1, 1947, to *148 certificate holders, the following distributions: Distribution
Per
certificate
Total
Quarterly rent for the quarter
ended March 31, 1947
$ 6.25
$ 1,781.25
Additional rents in respect of
the period from July 1, 1942,
through December 31, 1945
90.00
25,650.00
Additional rent in respect of
the period from January 1,
1946, through December 31,
1946
13.38
3,814.54
Distributions in respect of the
trustee's claim for accrued
and unpaid rent as allowed
in the reorganization pro-
ceedings of CTB, and in re-
spect of a minor claim which
was paid in full in said pro-
ceedings: Cash
$1.86
$535.81
55.4 shares of capital stock
of reorganized CTB having
a value of $51 per share
2,825.40
Total
$34,607.00
The first of the foregoing items, $1,781.25, representing quarterly rent for the quarter ended March 31, 1947, was reflected as income in the partnership return of McDonald & Company for the fiscal year ended March 31, 1947. The balance of the cash disbursements, $30,000.35, was credited by the partnership to the account in which the land trust certificates were held. The partnership also credited to that account the above 55.4 *149 shares of stock but in the amount of $2,770 (at a par value of $50) instead of in the above amount of $2,825.40, which represents the fair market value of $51 per share. The above amounts of $30,000.35 and $2,770 were considered by the partnership to represent a reduction in the capital basis of the certificates and were not reflected in income by it when received. On April 10, 1947, 14 of the certificates held by the partnership were redeemed by the trustee at a price of $505 for each certificate. On July 17, 1947, three certificates were redeemed at the same price. On July 30, 1947, the partnership sold the balance of 268 certificates at a price of $502.50 per certificate. In the partnership return for the fiscal year April 1, 1947 through March 31, 1948, the partnership reported a short-term gain on the 14 certificates redeemed on April 10, 1947, and a long-term gain on the certificates redeemed or sold in July 1947. The partnership computed its gains by taking the difference between the redemption or sales price received for the certificates and the cost of the certificates as adjusted for the payments received from the trustee on April 2, 1947, which payments the partnership *150 treated as a return of capital. The determination of the respondent as reflected in the notices of deficiency involved herein treats $32,825.75 ($30,000.35 in cash, and $2,825.40 as the fair market value of the stock) received from the trustee on April 2, 1947, as ordinary income rather than as a return of capital, and, accordingly, in computing the short- and long-term losses upon disposition of the certificates, considered each certificate as having a basis of $575, or the original cost thereof. Opinion The petitioners take the position that the transaction by which CTB transferred the Cleveland Hotel property to the trustee, the leasing back of the property to CTB, the subsequent issuance and sale of the land trust certificates, and the payment of the net proceeds thereof to CTB constituted a loan arrangement despite the language of the instruments involved describing the arrangement as a trust. From that, they contend that the payments referred to in the instruments as rental payments were in fact interest payments on indebtedness, that the amount of the distribution made by the trustee on April 1, 1947, to the partnership, McDonald & Company, with the exception of such portion *151 as represented the quarterly rental for the quarter ended March 31, 1947, and the additional rental for 1946 applicable to the 268 land trust certificates purchased by the partnership in December 1946, constituted interest which it had accrued on an indebtedness at the time the certificates were purchased, and that under the "flat purchase" rule constituted a return of capital to the partnership. The respondent takes the position that the arrangement is not to be regarded as a mortgage, that the land trust certificates are not to be regarded as in the nature of bonds, and that the "flat purchase" rule is not applicable. In the view we take of the situation it becomes unnecessary to determine whether the arrangement was in the nature of a loan, or was a trust as the instruments involved purported it to be, since, if it be conceded that the arrangement was a loan, the position of the petitioners is not improved. Under the "flat purchase" rule where bonds or notes with defaulted interest payments due thereon are purchased at a flat amount, the interest which had accrued thereon to the time of purchase constitutes a return of capital when collected. Interest accruing on such bonds *152 or notes after purchase constitutes income when collected. ; . In order for us to find that the partnership was entitled to apply the "flat purchase" rule to the amount in question, we first would have to find that such amount had accrued on the land trust certificates at the time the partnership purchased them. This we are unable to do. The trust agreement as originally made provided that whenever in that instrument, or in any land trust certificate issued thereunder, the trustee is obligated to pay or distribute any sum of money to the holders of such certificates, it is understood that all such obligations are undertaken by it in its trust capacity only and not personally, and that such payments and distributions are to be made only out of such funds as the trustee has in its hands available therefor. No change was made in that provision by the plan of reorganization. As amended by the plan of reorganization, the trust agreement not only provided for the use by the trustee of rentals and income of the trust estate to pay the trustee's compensation and expenses, *153 rents required or permitted to be paid by the trustee, all Federal, state, and local taxes, and all amounts required for the protection, preservation or benefit of the trust estate, but also provided for the reserving and withholding by the trustee out of the rentals and income of the trust estate received by it and the retaining in its hands of such amounts as the trustee might from time to time deem necessary to provide for the payment thereafter of items of the above-mentioned classes, and to provide for the protection, preservation or benefit of the trust estate. Quarterly, on the first days of January, April, July and October in each year, the money then in possession of the trustee arising out of the rentals and income of the trust estate, after deducting therefrom the amounts paid, reserved or withheld as set out above, was to be distributed by the trustee to the certificate holders of record on its books at the close of business on the 15th day of the month preceding the date of the particular distribution. Such distribution of money was to be made without regard to the time when such rentals or income might have accrued or been payable to the trustee. In view of the foregoing *154 provisions of the trust agreement, it is clear that the trustee was not obligated to make any distributions except of money in hand. Further, it was not obligated to make any distributions except of money in hand on the first days of the respective quarters and then only of such money in hand as remained after payment of specified items and reserving sums deemed necessary to pay items of that character thereafter. In this situation the trustee had no obligation to make a distribution with respect to money it had never received. Nor did it have any obligation to make a distribution of money received during a given calendar quarter until the first day of the following quarter and then only of such money as, under the terms of the trust agreement, was available for that purpose. Neither the trust instrument nor the certificates issued thereunder provided for the payment to certificate holders of a stated amount, or rate on a stated sum, on any specified date or dates as ordinarily provided in bonds and notes. Except in case of the sale of the trust property, or on the retirement of a certificate, all that the certificate holders were entitled to was to receive the distributions of income *155 and rentals of the trust estate as and when made by the trustee. In view of this and since the trustee was not obligated to make a distribution except out of funds in hand and available therefor and on the dates specified in the trust agreement and since, so far as appears, the funds out of which the controverted distribution was made were not paid to the trustee until sometime after the purchase of the certificates by the partnership, it must be concluded that the amount of the distribution in question had not accrued on the certificates at the time they were purchased by the partnership. Consequently, the controverted portion of the distribution in question was not a return of capital but was income. As an alternative contention the petitioners contend that if any part of the distribution made by the trustee on April 1, 1947, other than the quarterly rental for the quarter ended March 31, 1947, constituted income, it was income to the partnership for the fiscal year immediately prior to the fiscal year April 1, 1947 through March 31, 1948, which is the partnership year here involved. They rest their contention on the fact that the partnership kept its books on the accrual basis *156 and that by March 31, 1947, all of the payments out of which the distribution was made had been received by the trustees. It is well settled that to one keeping books on the accrual basis an amount accrues as income when his right to receive it becomes fixed. . Obviously the right to receive cannot become fixed prior to the time the payor becomes obligated to pay. As indicated heretofore, under the terms of the trust agreement, it was on the first days of January, April, July and October that the trustee became obligated to make distributions of money then on hand and available for that purpose. Since it was not until April 1, 1947, that the trustee became obligated to make the distribution made by it on that date, no portion of such distribution was accruable by the partnership prior to that date. As a further alternative contention the petitioners contend that under the circumstances presented it is apparent that of the distribution made on April 1, 1947, at least from $70 to $75 of the amount distributed per certificate constituted a return of the purchase price paid by the partnership and only the balance of the *157 distribution per certificate was income to the partnership. This contention, which is another form of the primary contention of the petitioners, is grounded on the fact that the partnership paid $575 each for the certificates which were subject to retirement at $505 each, that some of the certificates were retired at the latter amount in April and July 1947 and the remainder were sold by the partnership in July 1947 at $502.50 each and on the holdings in certain cases, including (on appeal C.A. 6); ; and . The Fisher and Life Insurance Company cases involved unpaid interest which had accrued prior to the occurrence of the transactions there involved. The Fackler case involved accrued and unpaid real property taxes which under the state law had become liens on the premises prior to the transaction there in question. Since, as held above, the amount of the distribution made on April 1, 1947, had not accrued prior to that date, the cases relied on by the petitioners are not applicable here. Since no portion of the distribution in question *158 had accrued prior to the purchase of the certificates by the partnership, the contention of the petitioners is denied. Decisions will be entered for the respondent. Footnotes
1. Proceedings of the following petitioners are consolidated herewith; Charles Edwin Lovell and Betty A. Lovell; Hans P. Lauritzen and Mary H. Lauritzen; Alva H. Warner and Beulah B. Warner; Estate of Eldon H. Keller, deceased, Florence M. Keller, Administratrix and Florence M. Keller; Harris B. McLaren and Coleeta C. McLaren; Herman J. Sheedy and Lois B. Sheedy; Charles B. McDonald and Florence McDonald; Richard C. Lux.↩